IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHIQUITA L. MCKINNES, | ) CASE NO. 2:06-CV-00550-WHA-VPM |
| Plaintiff, | ) JUDGE ALBRITTON |
| v. | ) |
| JOHNSON & JOHNSON, et al., | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REMAND**

Defendants Johnson & Johnson, Johnson & Johnson Pharmaceutical Research and Development, LLC, and Ortho-McNeil Pharmaceutical, Inc. (hereinafter "Pharmaceutical Defendants") hereby file their Response to Plaintiff's Motion to Remand.

**I.    THE COURT SHOULD REFRAIN FROM RULING ON PLAINTIFF'S MOTION TO REMAND AND SHOULD STAY ALL PROCEEDINGS IN THIS CASE**

Before turning to the substance of the Response, and in accordance with the contemporaneously-filed Motion to Stay Proceedings Pending Transfer to Multidistrict Proceeding (hereinafter "Motion for Stay"), the Pharmaceutical Defendants respectfully request that this Court stay its consideration of and ruling on Plaintiff's Motion to Remand, in light of the imminent transfer of this case by the Judicial Panel on Multidistrict Litigation ("MDL"). As explained in the Motion for Stay, a stay is appropriate to ensure judicial economy and consistency. In staying this case and deferring a decision on the Motion to Remand, this case can be addressed in the MDL proceeding that has been established before the Honorable David Katz (United States District Judge, Northern District of Ohio) to coordinate all product liability cases involving alleged health risks from the product in issue, Ortho Evra®.

Deferral of ruling on the Motion to Remand is particularly appropriate in pharmaceutical products liability litigation, where, as here, the issue of whether the plaintiff has fraudulently joined a non-diverse pharmaceutical sales representative (in an effort to defeat diversity jurisdiction) may present itself in multiple cases, thus being the type of issue which an MDL court is created to address.[1]  Given that the MDL court will be in the best position to resolve jurisdictional issues in a consistent manner, the Pharmaceutical Defendants request that the Court defer consideration of the motion to remand pending final MDL transfer to allow Judge Katz to uniformly decide any and all remand motions in the Ortho Evra® cases.  Alternatively, should the Court deny the Motion for Stay, the Pharmaceutical Defendants present this Response, which demonstrates that the Court may properly exercise subject matter jurisdiction over this case.

## II.     INTRODUCTION

Noticeably absent from Plaintiff's Motion to Remand is a recent—and dispositive— decision from the Eleventh Circuit Court of Appeals, *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005). *Legg* squarely addressed whether a plaintiff in a pharmaceutical products liability case may fraudulently join a non-diverse pharmaceutical sales representative in an effort to defeat federal diversity jurisdiction. *Legg*, 428 F.3d at 1319. Answering in the negative, and reversing the district court's order granting the plaintiff's motion to remand, the *Legg* court commented that "[t]he removal process was created by Congress to protect defendants. Congress 'did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to

---

[1] *See Legg v. Wyeth*, 428 F.3d 1317, 1320 n.1 (11th Cir. 2005) ("[a] common strategy employed by the plaintiffs in these cases is to name local parties, often Wyeth's local sales representatives, as defendants, thus defeating Wyeth's right to remove a case to federal court."); *see also id.* n.2 (noting that the MDL, "which has overseen a large part of this litigation, concluded that this joinder can 'only be characterized as a sham, at the unfair expense not only of [Wyeth] but of many individuals and small enterprises that are being unfairly dragged into court simply to (Continued)

overcome it.' . . . As the Supreme Court long ago admonished, 'the Federal courts should not sanction devices intended to prevent a removal to Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court.'" *Legg*, 428 at 1325 (internal citations omitted). Application of *Legg* disposes of the majority of the arguments contained in Plaintiff's Motion to Remand, and the remaining arguments advanced by Plaintiff provide no justification for remand. Plaintiff's Motion to Remand should be denied.

### III.   PROCEDURAL BACKGROUND

####   A.   Plaintiff's Complaint

Plaintiff Chiquita L. McKinnes ("Plaintiff"), a citizen of the State of Alabama, filed this product liability action on May 22, 2006. *See* Pl. Compl. (attached as Exh. A to Notice of Removal). In her Complaint, Plaintiff named the three Pharmaceutical Defendants (Johnson & Johnson, Johnson & Johnson Pharmaceutical Research and Development, LLC, and Ortho-McNeil Pharmaceutical, Inc.). Compl. ¶¶ 2-10. It is undisputed that all three of these entities are diverse from Plaintiff, as none is a citizen of the State of Alabama. *Compare* Not. of Removal at ¶¶ 13-18 *with* Pl. Mot. to Remand & Br. in Support (hereinafter "Pl. Br.").

Plaintiff also named two individuals as defendants: Ms. Jamie Forbes and Mr. Brad Morrow, both of whom are pharmaceutical sales representatives. *See* Compl. ¶¶ 11-12; Decl. of Jamie Forbes (hereinafter "Forbes Decl.") (attached as Exh. B to Not. of Removal), ¶ 2; Decl. of Brad Morrow (hereinafter "Morrow Decl.") (attached as Exh. C to Not. of Removal), ¶ 2. Unlike the Pharmaceutical Defendants, Ms. Forbes and Mr. Morrow are *not* diverse from Plaintiffs, as they are both citizens of the State of Alabama. *See* Compl. ¶¶ 11-12; Not. of Removal ¶¶ 17; Forbes Decl. ¶ 1; Morrow Decl. ¶ 1.

---

prevent the adjudication of lawsuits against [Wyeth], the real target, in a federal forum.") (Continued)

Plaintiff's Complaint alleges seven counts, all of which were asserted globally against all of the defendants: (1) strict liability under the Alabama Extended Manufacturer's Liability Doctrine (hereinafter "AEMLD"), (2) negligence, (3) breach of implied warranty, (4) breach of express warranty, (5) fraud, (6) negligent misrepresentation, and (7) fraud by concealment. Compl. ¶¶ 37-77.

B.    **The Pharmaceutical Defendants' Notice of Removal**

On June 20, 2006, the Pharmaceutical Defendants timely removed the case to this Court pursuant to 28 U.S.C. § 1332, 1441 and 1446.  *See* Not. of Removal.  The Notice of Removal explained that the Court could properly exercise original jurisdiction over the case under 28 U.S.C. § 1332(a) (diversity jurisdiction), because the matter in controversy exceeds $75,000 and complete diversity of citizenship exists.  *See* Not. of Removal ¶ 5.  More specifically, complete diversity exists because the Pharmaceutical Defendants (all of whom are diverse from Plaintiff) were the only properly-joined defendants; the non-diverse citizenship of Ms. Forbes and Mr. Morrow, who were fraudulently joined to defeat diversity, should be disregarded.  *See id*. ¶¶ 5, 13-32.  Moreover, Plaintiff failed to plead her claims of fraud with requisite particularity.  *See id*. ¶ 28.

C.    **Plaintiff's Motion to Remand**

Within three days after the case was removed, Plaintiff filed the instant Motion to Remand, asking the Court to return this case to state court.[2]  In the Motion to Remand, Plaintiff does not present any procedural challenge to removal, nor does Plaintiff dispute the amount in controversy or citizenship of the Pharmaceutical Defendants.  Instead, Plaintiff offers only one

---

(citations omitted).

challenge to this Court's proper exercise of jurisdiction—that Ms. Forbes and Mr. Morrow were not fraudulently joined. In so arguing, Plaintiff advances three arguments: (1) that she is permitted to pursue claims under the *AEMLD* against the sales representatives, (2) that she asserted valid *fraud*-based claims against the sales representatives, and (3) that she pleaded *fraud* with sufficient particularity. *See* Pl. Br. at 12, 16, 19. As emphasized, Plaintiff's Motion to Remand *only* addresses the *AEMLD* and *fraud-based* counts asserted against Ms. Forbes and Mr. Morrow. Plaintiff thus concedes that she may not pursue any claim for negligence, breach of implied warranty, or breach of express warranty against these two individuals under Alabama law. *Compare* Compl. ¶¶ 37-77 *with* Pl. Br. at 12, 16, 19.

## IV.  LAW & ANALYSIS

### A.  Fraudulent Joinder Standard

It is well established that a federal court may disregard the citizenship of fraudulently joined defendants in assessing the existence of complete diversity under 28 U.S.C. § 1332. *E.g.*, *Moses v. Allstate Indem. Co.*, No. 3:06cv154-WHA, 2006 WL 1361131, *3 (M.D. Ala. May 17, 2006) (denying motion to remand where defendants were fraudulently joined). As relevant here, the standard for finding fraudulent joinder is whether there is a "*reasonable basis*" to predict that an Alabama court could find in plaintiff's favor against the non-diverse defendant. *See Legg*, 428 F.3d at 1324 (emphasis added). "The potential for legal liability 'must be reasonable, not merely theoretical.'" *Id.* at 1325 n.5. "In considering *possible* state law claims, possible must mean 'more than such possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Id.*

---

[2]  Plaintiff filed the same Motion to Remand in *Pugh v. Johnson & Johnson et al.*, No. 2:06-CV-551; indeed, the arguments set forth in the motion in *Pugh* recite, verbatim, the same arguments made in this case.

(emphasis in original) (citations omitted).

In determining whether there is a reasonable basis to support the plaintiff's claim under Alabama law, the court considers the plaintiff's pleadings at the time of removal, as supplemented by affidavits or transcripts submitted by the parties. *See Legg*, 428 F.3d at 1322. "The proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b).'" *Id.* at 1322-23 (citations omitted).[3] In such a proceeding, the Eleventh Circuit has stated that questions of fact must be resolved in favor of the plaintiff. *E.g., id.* at 1323. This general rule, however, is tempered by an important condition: "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Id*. This issue arose in *Legg*; where the plaintiff did not offer any evidence to dispute the defendant's sworn statement, there was no question of fact for the court to resolve. *Id.* In such circumstances, the Eleventh Circuit held that the district court erred by failing to consider the undisputed sworn statement in analyzing fraudulent joinder. *Id*.

In light of the Eleventh Circuit's mandate in *Legg,* the determination of whether Ms. Forbes and Mr. Morrow were fraudulently joined requires evaluation of whether there is any *reasonable basis* to predict that an Alabama court could find in Plaintiff's favor against them on the AEMLD or fraud-based claims, particularly in light of Plaintiff's failure to rebut the undisputed declarations of Ms. Forbes and Mr. Morrow.

    **B.**    <u>**Plaintiff Fraudulently Joined Ms. Forbes and Mr. Morrow**</u>

        **1.**    **Plaintiff Cannot Maintain an AEMLD Claim Against Ms. Forbes and Mr. Morrow.**

---

[3] Plaintiff's Motion to Remand improperly asserts that the Court should employ a Rule 11-type analysis, in contravention of *Legg*'s recognition that a Rule 56(b) (summary judgment)-type analysis is warranted. *Compare* Pl. Br. at 11 *with Legg*, 428 F.3d at 1322-23.

Plaintiff first argues that she can maintain a valid claim against Ms. Forbes and Mr. Morrow under the AEMLD. Plaintiff is incorrect. As recently explained in *Southern v. Pfizer, Inc.*, No. 2:06-CV-8360-VEH (N.D. Ala. June 23, 2006) (attached hereto as Exhibit "A"), these two sales representatives are not "sellers" against whom a claim could be asserted under the AEMLD.

In *Southern*, the plaintiff brought a pharmaceutical products liability action against Pfizer and two of its sales representatives; one of the sales representatives had made *no* statements whatsoever regarding the prescription medicine in issue, and the other representative had called upon Southern's physician regarding the medicine, but had never provided any information to any physician regarding use of the medicine to treat the plaintiff's condition. *Southern*, *supra* at 5. Moreover, neither of the sales representatives had any involvement in manufacture, development, research or testing of the medicine, nor were they involved in development or preparation of the prescribing information or written warnings. *Id*. at 6. Despite the foregoing, the plaintiff brought claims against Pfizer *and* the sales representatives, including a claim under the AEMLD, failure to warn, breach of express and implied warranty, unjust enrichment, negligence, fraudulent misrepresentation, negligent and reckless misrepresentation, and civil conspiracy. *Southern*, *supra* at 2. The *Southern* court addressed each of these claims, found that the plaintiff had no reasonable possibility of maintaining her claims against the sales representatives, and denied the motion to remand. *Southern*, *supra* at 23.

    **(a) No claim as a matter of law.**

The *Southern* court first ruled, as a matter of law, that the plaintiff could not maintain a claim against the two sales representatives under the AEMLD. *Id*. at 9-15. As the court recognized, the AEMLD establishes a cause of action against a *manufacturer, supplier, or seller* who markets a product not reasonably safe when applied to its intended use in the usual and

customary manner. *Id*. at 10 (citing *Castrell v. Altec Indus., Inc.*, 335 So.2d 128, 132 (Ala. 1976)). The court considered, and rejected, the plaintiff's contention that the two Pfizer sales representatives could be subjected to liability as "sellers" under the AEMLD. *Id*. at 10-11. Commenting that the parties had not cited (nor had the court found) any published opinion that found a sales representative liable under the AEMLD as a "seller," the court agreed that there was no reasonable possibility of a claim against the sales representatives under the AEMLD in such circumstances. *Id*. at 11.

The court's conclusion that a sales representative is not a "seller" under the AEMLD was further supported by *In Re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272, 288 (S.D. N.Y. 2001) (cited by *Southern*, *supra* at 13-14). *In Re Rezulin* applied Alabama law and held that a pharmaceutical sales representative could not be held liable under the AEMLD as a "seller," as such interpretation would contravene the doctrine's purpose and scope, due to the representative's status as merely an agent of the manufacturer/seller; further, such a person was not the one best able to prevent sales of a defective drug. *In re Rezulin*, 133 F.Supp.2d at 288; *see also Bloodsworth v. Smith & Nephew*, No. Civ. A. 2:05 CV622-D, 2005 WL 3470337, *6 (M.D. Ala. 2005) (applying Alabama law and finding that a sales representative who sold a product was not a "seller" under the AEMLD); *In Re Baycol Prods. Liability Lit.*, MDL No. 1431-*4-7 (D. Minn. Mar. 26, 2004) (same); *In Re Prempro Prods. Liability Lit.*, No. 4:03CV1507-WRW, 4:05CV1889, 2006 WL 617981,*1 (E.D. Ark. Mar. 8, 2006) (same).

Application of these principles precludes Plaintiff's claim against Ms. Forbes or Mr. Morrow under the AEMLD. As a matter of law, neither is a "seller" against whom liability could be imposed. *See Southern*, supra at 9-15; *In re Rezulin*, 133 F.Supp.2d at 288; *Bloodsworth*, 2005 WL 3470337, *6; *In Re Baycol*, MDL No. 1431-*4-7; *In Re Prempro,* 2006 WL 617981 at *1.

### (b) No claim as a matter of fact.

*Southern*, following the mandate from *Legg v. Wyeth*, also rejected the plaintiff's attempt to hold a sales representative liable as a "seller" where the plaintiff failed to refute sworn affidavits by the sales representatives. This was a straightforward application of *Legg*, which had disapproved of similar fraudulent joinder tactics in joining sales representatives as defendants where the plaintiffs offered nothing to rebut the sworn statements made by sales representatives that they did not know, nor should have known, of harmful effects of the prescription medicine in question. *Legg*, 428 F.3d at 1321 & n.3. Indeed, in *Legg* (as here), the plaintiff named sales representatives who had not even sold the prescription medicine in issue and had no knowledge of any association between side effects and the medicine. *Legg*, 428 F.3d at 1321-22 (further noting that the plaintiff failed to show that the sales representative had sold the product to the plaintiff's actual prescribing physician).

Like the plaintiffs in *Legg* and *Southern*, in this case Plaintiff has provided no evidence to dispute the declarations of the sales representatives. Ms. Forbes' declaration explains that her employer has never had any responsibility for any aspect of marketing or sale of Ortho Evra®; she has never called on a healthcare provider with information about Ortho Evra®; she has had no involvement with development or preparation of prescribing information or warnings for Ortho Evra®; she has had no involvement with manufacture, development or testing of Ortho Evra®; she has never sold, offered to sell or take orders for the sale of Ortho Evra® to patients; she is not a physician or pharmacist and has thus never prescribed or filled a prescription for Ortho Evra®; and she has never met or spoken with Plaintiff. Forbes Decl. ¶¶ 2-11.

Mr. Morrow, who is employed by Ortho-McNeil Pharmaceutical, Inc., provides information on products including Ortho Evra® to healthcare providers, but he has never sold, offered to sell or take orders for patients, including the Plaintiff. Morrow Decl. ¶¶ 3-5, 9. The

physicians upon whom Mr. Morrow called wrote prescriptions for Ortho Evra® based upon their independent medical knowledge and judgment, and Mr. Morrow possessed no direct knowledge of any specific prescriptions written by these physicians to their patients. *Id*. ¶ 9. Moreover, the only information he has provided to healthcare providers regarding Ortho Evra® has been limited to FDA-approved promotional and patient education materials provided by Ortho-McNeil. *Id*. ¶ 6. In addition, like Ms. Forbes, Mr. Morrow has had no involvement with the manufacture, development or testing of Ortho Evra®, nor the development or preparation of prescribing information or written warnings for Ortho Evra®. *Id*. ¶¶ 7-8. He has also never met or spoken with Plaintiff, and has never written or filled a prescription for Ortho Evra®, as he is not a physician or pharmacist, and he has never provided any warranty to any physician. *Id*. ¶ 10-12.

The above declarations are unrebutted by Plaintiff. *See* Pl. Br. Although Plaintiff's Motion to Remand advances a host of accusations smacking of greed and aggressive sales tactics, what is most remarkable is the lack of *any* evidentiary support for these unjustified attacks. *See* Pl. Br. at 13. As the Eleventh Circuit made clear in *Legg*, the district court has an obligation to consider the undisputed declarations of Ms. Forbes and Mr. Morrow, both of which negate the unfounded attacks upon them. Accordingly, under the authority of *Legg* and *Southern, supra*, Plaintiff has no reasonable possibility of recovery against Ms. Forbes or Mr. Morrow under the AEMLD.

      **2.    Plaintiff Cannot Maintain Fraud-Based Claims Against Ms. Forbes and Mr. Morrow.**

There is also no reasonable possibility that an Alabama court could find in Plaintiff's favor on the claims of fraud, negligent misrepresentation or fraud by concealment against Ms.

Forbes or Mr. Morrow.[4]

### (a) No claim as a matter of law or fact

As an initial and dispositive matter, Plaintiff's fraud-based claims require the existence of a duty to disclose—yet Ms. Forbes and Mr. Morrow had no such duty to the Plaintiff under the "learned intermediary" doctrine. *See Southern*, *supra* at 16 (citing, e.g., *Fisher v. Comer Plantation*, 772 So.2d 455, 463 (Ala. 2000)). In this case, the manufacturer (Ortho McNeil), *not* the sales representatives, had a duty to disclose potential dangers to the prescribing physician, or "learned intermediary." *See Southern*, *supra* at 16; *Walls v. Alpharma USPD, Inc.*, 887 So.2d 881 (Ala. 2004); *Stone v. Smith, Kline & French Labs.*, 447 So.2d 1301, 1305 (Ala. 1984); *see also Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1313-14 (11th Cir. 2000). Under this authority, as a matter of law, Ms. Forbes and Mr. Morrow had no duty to disclose information to Plaintiff.[5] In addition, it is undisputed that neither Ms. Forbes nor Mr. Morrow had any contact with Plaintiff. Forbes Decl. ¶ 11; Morrow Decl. ¶ 12.

Moreover, the Eleventh Circuit in *Legg* ruled that a pharmaceutical sales representative may not be held liable for "innocent or negligent misrepresentation" absent a showing that the employee was a "participant in the wrongful act." *Legg*, 428 F.3d at 1324 (citations omitted). Stated differently, a corporate employee may only be held personally liable if he or she personally participates in the tort. *Id*. Here, Plaintiff's claims fail as a matter of fact; any

---

[4] In Plaintiff's Motion to Remand, Plaintiff refers to claims of "fraud, fraudulent misrepresentation, fraudulent suppression and concealment" against Ms. Forbes and Mr. Morrow. *See* Pl. Br. at 16. The instant Response tracks Plaintiff's causes of action as identified in Plaintiff's Complaint. *See* Compl. at 13 (Count V – Fraud), 14 (Count VI – Negligent Misrepresentation), 16 (Count VII – Fraud by Concealment).

[5] Had Plaintiff decided to challenge fraudulent joinder as to her negligence or warranty claims, the learned intermediary doctrine would similarly preclude those claims as a matter of law.

11

requisite showing of bad faith is negated by the declarations of Ms. Forbes and Mr. Morrow, described above, in light of Plaintiff's failure to dispute any of their statements.[6] For example, Plaintiff's accusations that Ms. Forbes and/or Mr. Morrow purportedly had "far superior knowledge" relating to Ortho Evra®—even more than "prescribing physicians and patients who used the product"—are not supported by any evidence whatsoever. Such arguments fail, both as a matter of law (no duty to Plaintiff) and as a matter of fact (no evidence in response to declarations).

Further, and to the extent Plaintiff's Motion to Remand seeks to impress through lengthy string citations, that "District Courts in Alabama have repeatedly rejected similar fraudulent joinder claims and suppression claims against pharmaceutical sales representatives and have remanded these cases to state court," these cases were issued without the benefit of *Legg* (decided October 25, 2005)—which affirmatively rejected the notion that Plaintiff proposes here. *Compare* Pl. Br. at 17-18 (citing 26 cases against Wyeth) *with Legg*, 428 F.3d at 1324 (reversing the order granting remand against Wyeth, where the district court erred in not considering the unrebutted evidence showing fraudulent joinder).

### (b)   Failure to plead with particularity

In addition, Plaintiff has failed to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). The pleading requirements are not satisfied where a plaintiff fails to distinguish among defendants and specify their respective roles in the alleged fraud. *E.g., McAlliston Towing & Transport Co. v. Thorn's Diesel Serv., Inc.*, 131 F.Supp. 2d 1296, 1302 (M.D. Ala. 2001); *Burns v. Wyeth, Inc.*, 352 F. Supp.2d 773, 777 (E.D. Ky. 2004) (denying

---

[6]   A recent case illustrates that even after allowing a request to permit limited jurisdictional discovery as to the issue of fraudulent joinder, the plaintiff will ultimately not be able to prove (Continued)

motion to remand where plaintiff failed to provide specific evidence as to alleged fraud of pharmaceutical sales representatives). In this case, Plaintiff's unsupported allegations do not come close to meeting the particularity requirements; to the contrary, Plaintiff continues to levy general and conclusory accusations against all the defendants. *See, e.g.*, Pl. Br. at 19. Nowhere does Plaintiff articulate to whom representations (or alleged "suppressions") were made; in fact, Plaintiff does not even name a prescribing physician who may have received such information from a sales representative. There is no indication when, where, how, or to whom information was or was not relayed. In sum, Plaintiff has failed to adequately plead fraud with particularity.

V.  **CONCLUSION**

Given the foregoing, there is no reasonable basis to predict that an Alabama court could find in Plaintiff's favor against Ms. Jamie Forbes or Mr. Brad Morrow under the AEMLD, or for fraud, negligent misrepresentation or fraud by concealment. Accordingly, Plaintiff's Motion to Remand should be denied.

---

any set of facts to establish that a sales representative made a fraudulent misrepresentation to the plaintiff. *See Bloodsworth v. Smith & Nephew*, 417 F.Supp.2d 1249, 1250-52 (M.D. Ala. 2006).

       Respectfully submitted,

**/s/ Joseph P. H. Babington**
JOSEPH P. H. BABINGTON (BABIJ7938)
RUSSELL C. BUFFKIN (BUFFR6510)
THOMAS RYAN LUNA (LUNAT2309)

*Attorneys for Defendants Johnson & Johnson, Johnson & Johnson Pharmaceutical Research & Development, LLC, and Ortho-McNeil Pharmaceutical, Inc.*

OF COUNSEL:

**HELMSING, LEACH, HERLONG, NEWMAN & ROUSE, P.C.**
P.O. Box 2767
Mobile, AL  36652
Phone: 251-432-5521
Fax: 251-432-0633

 - and -

SUSAN M. SHARKO
**DRINKER BIDDLE & REATH LLP**
500 Campus Drive
Florham Park, NJ  07932
*Subject to Pro Hac Vice Admission*

## CERTIFICATE OF SERVICE

      This is to certify that the undersigned has this date electronically filed the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REMAND** with the Clerk of the U. S. District Court for the Middle District of Alabama using the CM/ECF system which will send notification of such filing to the following counsel:

Jere L. Beasley
Andy D. Birchfield, Jr.
Wesley Chadwick Cook
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Telephone:   334.269.2343
Telefax:   334.954.7555

**Attorneys for Plaintiff**

                                          **/s/ Joseph P. H. Babington**
                                          OF COUNSEL

113425